**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**AT LEXINGTON**

**CIVIL ACTION NO. 17-352-HRW-CJS**

**NEWELL STACY**                                                                                     **PETITIONER**

**v.**                                       **REPORT AND RECOMMENDATION**

**KEVIN MAZZA, Warden**                                                          **RESPONDENT**

\* \* \* \* \* \* \* \* \* \*

Newell Stacy, proceeding *pro se*, brings eight claims for habeas relief in his 28 U.S.C. § 2254 petition.[1]  (R. 1).  He also asks that the Court appoint him counsel and hold an evidentiary hearing to develop his claims.  (*Id.* at Page ID 23).  Pursuant to local practice, this matter has been referred to the undersigned for consideration and preparation of a Report and Recommendation under 28 U.S.C. § 636(b).  As explained below, it will be recommended that the § 2254 petition be denied.

## I.     BACKGROUND

In November 2011, a Kentucky jury convicted Stacy of first-degree rioting and being a first-degree persistent felony offender for his role in a prison riot at Northpoint Training Center in Burgin, Kentucky.  The trial court sentenced him to "a maximum term of twenty (20) years at hard labor."  (R. 13-1, Page ID 99).  Because Stacy's sentence was "for twenty years or more,"

---

[1] At the time Stacy filed this case, Gary Beckstrom was the Warden at the Eastern Kentucky Correctional Complex, the prison where Stacy was then incarcerated. James David Green subsequently became Warden at that facility and therefore was substituted as the proper respondent custodian in accordance with Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts. (R. 19).  However, Stacy has since been transferred to Green River Correctional Complex, where Kevin Mazza is Warden.  Therefore, the Clerk is directed to substitute Warden Kevin Mazza in the case caption.

Kentucky Constitution § 110(2)(b), he appealed directly to the Kentucky Supreme Court, which affirmed his convictions and sentence, *Stacy v. Commonwealth*, 396 S.W.3d 787, 790 (Ky. 2013).

In August 2013, Stacy filed a *pro se* "Motion for Vacatur of Judgment of Conviction and Sentence," raising one ground of trial court error and two ineffective-assistance-of-counsel grounds.  (R. 13, Page ID 205, 211, 214, 219).  The trial court construed the motion as seeking relief under Kentucky Rule of Civil Procedure (CR) 60.02, denied the motion, and informed Stacy that his issues would properly be brought under Kentucky Rule of Criminal Procedure (RCr) 11.42.  (R. 13, Page ID 226-27).  On appeal (*id.* at Page ID 228), the Kentucky Court of Appeals agreed with Stacy that his ineffective-assistance grounds should have been construed in the first instance as seeking RCr 11.42 relief and remanded the case for further consideration. *Stacy v. Commonwealth*, No. 2013-CA-001884-MR, 2014 WL 6057868, at *3 (Ky. Ct. App. Nov. 14, 2014).  However, the Kentucky Court of Appeals concluded that Stacy was "procedurally barred from raising [his trial-court-error] issue now, whether the motion was brought pursuant to RCr 11.42 or CR 60.02," because "this issue could and should have been raised on direct appeal."  *Id.* at *2.

On remand, the trial court considered but rejected Stacy's ineffective-assistance grounds.  (R. 13, Page ID 302).  Stacy again appealed (*id.* at Page ID 303), and the Kentucky Court of Appeals affirmed.  *Stacy v. Commonwealth*, No. 2015-CA-000585-MR, 2016 WL 1558567, at *1 (Ky. Ct. App. Apr. 15, 2016).  The Kentucky Supreme Court denied discretionary review in March 2017 (R. 13, Page ID 72).

In August 2017, Stacy filed this § 2254 petition raising eight claims:  (1) trial court error by permitting "the jury to replay testimony at a critical stage, outside of his presence, and not in open court, during jury deliberations"; (2) ineffective assistance of trial counsel because "trial counsel operated under a conflict of interest by representing multiple defendants charged with the

2

Northpoint riot, an issue the trial court refused to address asserting the issue was best for RCr 11.42

relief"; (3) denial of "his Sixth Amendment right to fast and speedy trial and his Fourteenth

Amendment right to due process and equal protection of the law"; (4) denial of "his Sixth

Amendment right to a fair trial and his Fourteenth Amendment right to due process and equal

protection of the law when:  defense witnesses were paraded before the jury in prison clothing

with the designed prejudicial intent to lessen their credibility before the jury, that because they

were prisoners, their testimony could not be taken as true"; (5) ineffective assistance of counsel

when trial counsel "(a) operated under an actual conflict refused to, (b) advocate his pretrial

motions to the court, (c) obstructed his ability to be provided all discovery and, (d) failed to contact

witnesses that possessed exculpatory evidence all of which denied him his right to present a

complete defense against the charges"; (6) ineffective assistance of counsel because appellate

counsel "operated under an actual conflict refused to advocate his dead-bang winning claim on

appeal, that because the trial court refused to recognize that an actual conflict existed by Stacy

being represented by DPA counsel failed to appoint conflict counsel and this failure permitted

Stacy to be represented by DPA counsel who were operating under an actual conflict of interest as

a matter of law"; (7) denial of his right to represent himself "when the trial court misstated the law

in regards to petitioner's appeal rights if he proceeded with his wish for pro se representation";

and (8) ineffective assistance "when his trial attorney advised him to reject a ten year plea deal

which resulted in him proceeding to trial and receiving a much harsher sentence."  (R. 1, Page ID

5, 7, 8, 10, 16, 17, 20, 22).[2]  Respondent argues that Stacy's claims are procedurally defaulted or

meritless.  (R. 11).

---

[2] Minor alterations—changing the verb tenses of words, eliminating capitalization, and omitting
punctuation—have been made to the quoted portions of Stacy's § 2254 petition.

II.    **ANALYSIS**

A.    **Legal Standard**

Stacy's habeas petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which allows courts to grant habeas relief only when a state court's merits adjudication of the claim:

1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The "contrary to" and "unreasonable application" clauses under § 2254(d)(1) have independent meaning. *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). First, "[a] state court's decision is contrary to clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a different result from [this] precedent." *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (quoting *Williams*, 529 U.S. at 405-06).

Second, a state court's decision involves an "unreasonable application" of federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decision but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted).

4

Thus, under AEDPA, the question for this Court is "not whether a federal court believes the state court's determination was incorrect but whether the determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

Moreover, a petitioner carries the burden of proof, and "this is a difficult to meet, and highly deferential, standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal citations omitted). Further, factual findings of the state court are presumed correct unless the petitioner presents clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). Section 2254 relief is grounded in the rationale that federal habeas review exists to ensure that individuals are not unconstitutionally imprisoned; therefore, it is intended to cure only serious constitutional errors, not merely to correct errors of fact or re-litigate state adjudications. *See Herrera v. Collins*, 506 U.S. 390, 401 (1993) ("Federal courts are not forums in which to re-litigate state trials.").

**B.     Stacy's Claims**

**1.     Replay of Testimony Outside Stacy's Presence (Claim 1)**

Stacy's first claim argues that his constitutional rights to a fair trial and due process were violated when the trial court let the jury replay testimony during jury deliberations outside of his

presence and not in open court.[3]   (R. 1, Page ID 5).   Respondent argues that this claim is procedurally defaulted and otherwise meritless.

The Court first turns to Respondent's procedural-default argument, which specifically argues that Stacy failed to follow a Kentucky procedural rule—that errors be preserved at the trial level by objection—and thus this Court should decline to review the claim.   (R. 13, Page ID 61); *see Stacy*, 396 S.W.3d at 791 (reviewing this claim for palpable error under RCr 10.26 because "no objection to the court's action was made").   Under the procedural-default doctrine, "a federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017).   This doctrine promotes several interests—comity, finality, and federalism.   *Id.*

While the Court normally would adjudicate a procedural-default argument before reaching the merits of a claim, the Court declines to do so here because Stacy argues that he can excuse his default (*see* R. 17, Page ID 371), which would ultimately require a more complicated analysis than resolving this issue on the merits.[4]   *Smith v. Nagy*, No. 18-1751, 2020 WL 3167645, at *10 (6th Cir. June 15, 2020) ("Although issues of . . . procedural default in habeas proceedings ordinarily should be addressed first, those issues do not affect [a court's] jurisdiction . . . [and courts] may sometimes reach the merits of a petitioner's claim, particularly when the merits are easily resolvable against the petitioner while the procedural issues are complicated"); *Helms v. Bowerman*, 785 F. App'x 274, 279 (6th Cir. 2019) ("Thus, because the procedural-default issue

---

[3] As with many of Stacy's claims, this one is argued in a single line.

[4] Similarly, the Court declines to address Respondent's argument that Stacy did not fairly present this claim in state court in terms of federal law.   (R. 13, Page ID 62); *see Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004) (discussing what a petitioner must do to fairly present the substance of his federal claims to the state court before seeking habeas review).

here is complicated and unnecessary to the disposition of this case and the merits issue is straightforward, we proceed to the merits of Helms's claim without deciding the procedural-default issue.").

Having decided a merits analysis is the best route, the Court considers the standard of review. So-called "AEDPA deference" under § 2254(d) applies only if the claim was adjudicated on the merits in the state court; if it was not, "the petitioner's claim is reviewed *de novo* as it would be on direct appeal." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020). The Kentucky Supreme Court decided this claim under the palpable-error standard, which raises the question, does such review render the Kentucky Supreme Court's ruling a decision on the merits? The answer has been debated in the Sixth Circuit but appears to have been resolved. In addressing a similar type of review, plain error,[5] the Sixth Circuit has noted its inconsistent rulings:

> In 2009, we held that AEDPA applies to a state court's plain-error analysis if it "conducts any reasoned elaboration of an issue under federal law." *Fleming v. Metrish*, 556 F.3d 520, 531 (6th Cir. 2009). But in 2014, we said that "plain-error review is not equivalent to adjudication on the merits, which would trigger AEDPA deference." *Frazier v. Jenkins*, 770 F.3d 485, 496 n.5 (6th Cir. 2014).
>
> Both rulings cannot be right, as they look in opposite directions.

*Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017). Ultimately, *Stewart* sided with *Fleming*, noting that it was the earlier case and that it was in accord with decisions of sister circuits. *Id.* Accordingly, the Court follows *Stewart*'s instruction, applying AEDPA deference to this claim.[6]

---

[5] The Kentucky Supreme Court has described the federal plain-error doctrine as the "analog to [Kentucky's] palpable error rule." *Miller v. Commonwealth*, 391 S.W.3d 857, 865 (Ky. 2013).

[6] If future precedent undermines *Stewart*'s validity, the Court notes that it has also considered the result if the claim were reviewed *de novo* and concludes that it would still fail. *See Ojile v. Smith*, 779 F. App'x 288, 293 (6th Cir. 2019) (noting that when a "claim would fail even de novo review, [it is unnecessary] to address the question whether AEDPA deference would apply to the state court's rejection of the claim on 'plain error' review").

Turning to Stacy's claim, he has failed to make an initial showing. At the forefront, habeas relief is limited under § 2254(a) to grounds that a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." And under § 2254(d), a petitioner must point to "clearly established Federal law, as determined by the Supreme Court of the United States" as the guidepost for his claim. *See Renico v. Lett*, 559 U.S. 766, 779 (2010) (noting that Sixth Circuit erred in relying on its own decision in authorizing habeas relief).

Here, Stacy identifies one Supreme Court case, *Snyder v. Massachusetts*, 291 U.S. 97 (1934), and quotes (mostly correctly) the following portion: "We assume in aid of the petitioner that in a prosecution for a felony the defendant has the privilege under the Fourteenth Amendment to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Snyder*, 291 U.S. at 105-06; (R. 17, Page ID 370). Stacy likely relies on this quote from *Snyder* because the Kentucky Supreme Court cited it, along with state law, in concluding that it was error (although not palpable error) for the trial court to replay testimony outside of his presence. *Stacy*, 396 S.W.3d at 792. To the extent that Stacy relies on the Kentucky Supreme Court's decision on direct appeal to bolster his argument, the Kentucky Supreme Court is not the United States Supreme Court and thus its precedent is not "clearly established Federal law." *See Stermer v. Warren*, 959 F.3d at 727 (noting that opinions of federal courts of appeal are not "clearly established Federal law").

To the extent that Stacy relies only on *Snyder*, it does not hold that a trial court violates a defendant's rights by replaying testimony to a jury outside of his presence; rather, that case addressed a jury being allowed to view the scene of a crime without the defendant present. *Snyder,* 291 U.S. at 103. If Stacy implies that *Snyder* is similar enough to his case to warrant relief, he is wrong. The Supreme Court has repeatedly cautioned the lower courts about framing its cases at "a high level of generality." *Nevada v. Jackson*, 569 U.S. 505, 512 (2013) (*per curiam*). Instead,

a Supreme Court case must address "the specific question presented by [the habeas petitioner's] case." *Lopez v. Smith*, 574 U.S. 1, 6 (2014); *see Woods v. Donald*, 575 U.S. 312, 317 (2015) ("First, if the circumstances of a case are only 'similar to' our precedents, then the state court's decision is not 'contrary to' the holdings in those cases."). Applying such instruction here, *Snyder* is not clearly established federal law applicable to Stacy's claim. *See Helms*, 785 F. App'x at 282 ("The problem for Helms, however, is that he has identified no Supreme Court precedent that shows that the state court's decision was such an 'extreme malfunction.'") (quoting *Woods*, 575 U.S. at 319).

Assuming, *arguendo*, that Stacy had an applicable Supreme Court case, he would still not be entitled to relief.  As the Kentucky Supreme Court concluded, Stacy failed to show any error from the trial court's allowing the jury to replay testimony outside his presence—i.e., "that he would not have been convicted had he been present when the jury viewed the witness testimony." *Stacy*, 396 S.W.3d at 792.  Even on habeas review, Stacy does not try to establish prejudice, citing *Snyder* and arguing that it contains no harmless-error test that he must meet.  (R. 17, Page ID 370). This is incorrect.  Even though *Snyder* does not govern, it is worth noting that it applied harmless-error review.

> The blunder did not harm him, for there is no hint in all the evidence that the presence or absence of the pump had any bearing on the verdict.  The situation is much the same as in cases where there has been misconduct by the jury.  The verdict is not upset for such a cause, if there was no substantial harm.

*Snyder,* 291 U.S. at 118.

More to the point, the Supreme Court has "h[e]ld that in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in [*Brecht v. Abrahamson*, 507 U.S. 619 (1993)]." *Fry v. Pliler*, 551 U.S. 112, 121 (2007).  The standard from *Brecht* derives from

*Kotteakos v. United States*, 328 U.S. 750 (1946), the full test being "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht*, 507 U.S. at 637 (quoting *Kotteakos*, 328 U.S. at 776). The Supreme Court has observed that "[t]his standard is grounded in the federal harmless-error statute." *Brecht*, 507 U.S. at 631 (citing 28 U.S.C. § 2111). Applying it here, Stacy identifies no error that "had substantial and injurious effect or influence in determining the jury's verdict." *United States v. Paul*, 57 F. App'x 597, 608 (6th Cir. 2003) ("The rule requiring a defendant's presence at every stage of the trial must be reviewed by this court for harmless error."); *United States v. Reynolds*, 489 F.2d 4, 8 (6th Cir. 1973) ("The rule requiring that a defendant be present at all stages of the trial must be considered together with Rule 52(a), Fed.R.Crim.P., which provides that harmless error is to be disregarded."). Thus, for these reasons, this claim fails.

### 2.    Conflict of Interest from Multiple Representation (Claim 2)

Stacy's second claim argues that his trial counsel was ineffective because counsel had a conflict of interest from representing multiple prison-riot defendants. (R. 1, Page ID 7). Respondent argues that this claim fails on the merits. (R. 13, Page ID 64). Adjudication of this claim is complicated by Stacy's reply brief, which indicates that he is not actually arguing this claim as presented.

Looking to sub-issues in claims five and six, which also raise conflict-of-interest issues, helps shed light on Stacy's intention with this claim. (R. 1, Page ID 16-17). In his reply brief, Stacy elaborates on these sub-issues and claim two in the process, appearing to argue that all of his conflict-of-interest issues stem from an argument that he made in state court in his RCr 11.42 motion. (R. 17, Page ID 372). In that motion, Stacy argued that the Department of Public Advocacy (DPA), which designated public defenders to represent him at trial and on appeal, had a statutory conflict arising from the DPA's organization under Kentucky Revised Statute

10

15A.020(1)(e), which organizes departments of the Justice and Public Safety Cabinet, including the DPA and the Kentucky Department of Corrections (KDOC). (*See* R. 13, Page ID 211).

Stacy's argument in his RCr 11.42 motion, apparently incorporated into his reply brief in this case, boils down to this—because the DPA and the KDOC are organized under the same statute, they share an alliance that made it impossible for the DPA to represent him—conflict free—in his criminal case involving a prison riot.[7] Stacy maintains that he is not "referring to the type of conflict addressed by the Kentucky Supreme Court" on direct appeal (R. 17, Page ID 372), which opinion addressed a conflict of interest from the alleged fact that Stacy's trial counsel represented other prison riot defendants, *Stacy*, 396 S.W.3d at 793. This is perplexing, given that claim two specifically states "trial counsel operated under a conflict of interest by representing multiple defendants charged with the Northpoint riot." (R. 1, Page ID 7).

The Court ultimately does not know what Stacy intends with claim two *as articulated.*[8] To the extent that he does not intend to argue that his trial counsel operated under a conflict of interest from representing multiple prison riot defendants, this claim will be viewed as abandoned.[9] But to the extent that Stacy does wish to pursue this claim as presented, it is meritless.

To prevail on an ineffective-assistance-of-counsel claim, a petitioner must show that (1) counsel's performance was constitutionally deficient, and (2) counsel's deficient performance so

---

[7] "As a matter of law there existed an actual conflict of interest when Stacy was represented by DPA counsel who are also employees of the Justice and Public Safety Cabinet, a de facto victim through the KDOC of the [prison] riot." (R. 13, Page ID 212).

[8] To the extent that this claim intends to adopt the argument presented in his RCr 11.42 motion, that variation of the claim will be addressed later in this Report and Recommendation.

[9] This is likely what Stacy intends, as his RCr 11.42 motion treated the claim as meritless. "Regarding the conflict of interest, appellate counsel raised a meritless argument that since Stacy was represented by some of the DPA counsel that were representing other defendants charged in the NTC riots, there was a conflict of interest." (R. 13, Page ID 220).

prejudiced the defense as to render the trial unfair and undermine confidence in the reliability of the outcome. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult," because both *Strickland* and § 2254(d) are "highly deferential" and when both the standards apply together, review is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations omitted).

As the *Strickland* Court noted, "[o]ne type of actual ineffectiveness claim . . . [exists] when counsel is burdened by an actual conflict of interest." *Strickland,* 466 U.S. at 692. But as the Kentucky Supreme Court noted in addressing this claim on the merits on direct appeal, "joint or multiple representation 'is not *per se* violative of constitutional guarantees of effective assistance of counsel.'" *Stacy*, 396 S.W.3d at 793 (quoting *Holloway v. Arkansas*, 435 U.S. 475, 482 (1978)). Thus, Stacy's argument, which simply begins and ends with an assertion that a conflict arose *because* his counsel allegedly represented multiple prison-riot defendants, fails to show that his counsel was ineffective. And Stacy has thus not shown that the Kentucky Supreme Court's decision was contrary to or involved an unreasonable application of Supreme Court precedent.

### 3.   Right to a Speedy Trial (Claim 3)

Stacy's third claim argues that his speedy-trial rights were violated by the twenty-month six-day delay in his trial. (R. 1, Page ID 8). Respondent argues that this claim is meritless.

A defendant has "the right to a speedy and public trial" under the Sixth Amendment, which rights apply to the states through the Fourteenth Amendment. *Brown v. Romanowski*, 845 F.3d 703, 712 (6th Cir. 2017). Courts consider four factors from *Barker v. Wingo*, 407 U.S. 514 (1972), to determine whether a defendant's speedy-trial rights were denied: "(1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant." *Brown*, 845 F.3d at 712 (citing *Barker*, 407 U.S. at 530). The Kentucky Supreme

12

Court addressed these factors in denying the merits of this claim below, which analysis this Court now reviews under AEDPA deference.

The first factor—the length of the delay—is the so-called "triggering mechanism," although it also serves "as a measure of the severity of the prejudice suffered by an accused." *Rice v. Warden, Warren Corr. Inst.*, 786 F. App'x 32, 34 (6th Cir. 2019), *cert. denied sub nom. Rice v. Jackson-Mitchell*, 140 S. Ct. 819 (2020). The "triggering mechanism" is the threshold requirement, meaning, "the delay must be lengthy enough to trigger a constitutional analysis at all." *Id.* Generally, delays over a year satisfy this factor, triggering an analysis of the remaining *Barker* factors. *Id.* Here, the Kentucky Supreme Court held "that the delay of twenty months and six days was presumptively prejudicial." *Stacy*, 396 S.W.3d at 796. However, it is important to keep in mind that this threshold conclusion "does not necessarily indicate a statistical probability of prejudice" for when the final *Barker* factor, prejudice to Stacy, is later considered. *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992).

The second factor—the reason for the delay—weighed against Stacy for several reasons. *Stacy*, 396 S.W.3d at 796. First, it was Stacy's continued insistence on being involved in his defense that resulted in various delays so that he could have plenty of time to review his discovery. *Id.* at 797. As the Kentucky Supreme Court put it—Stacy "would like to have his cake and eat it, too." *Id.* He viewed his access to discovery "as vital" but objected to the time that "the trial court had to allot" for such. *Id.* Second, Stacy agreed to some of the delay, a one-month period. *Id.* Third, Stacy filed an "abundance of pro se motions." *Id.* While Stacy was "entitled to file these motions, the trial court must have sufficient time to dispose of them before trial." *Id.* Lastly, the Kentucky Supreme Court rejected Stacy's assertion that the KDOC's seeking a protective order over Stacy's access to an internal report unreasonably delayed his trial, reasoning that "nothing in the record establishes the [K]DOC's motion was made in bad faith or was meant to unreasonably

delay Appellant's trial, as the [K]DOC sought to protect the legitimate interests of its institutions." *Id.* at 798.

The third factor—Stacy's assertion of his right—also weighed against him. As the Kentucky Supreme Court reasoned, although Stacy asserted his right by motion, his agreement to delay his trial cast doubt on the sincerity of the invocation of his right, which "he did not vigorously" assert. *Id.*

The fourth factor—prejudice to Stacy—necessitates consideration of three interests: "(1) to prevent oppressive pretrial incarceration, (2) to minimize anxiety and concern, and (3) to minimize damage to the defense." *Brown*, 845 F.3d at 716 (citing *Barker*, 407 U.S. at 532). The third interest is the most serious. *Id.* The first interest was a non-starter according to the Kentucky Supreme Court because Stacy would have been incarcerated on other crimes regardless of the charges underlying his challenged state court case. *Stacy*, 396 S.W.3d at 798-99. The second interest was not met either as Stacy "failed to establish that he has suffered any unusual anxiety as a result of the pending charges before him." *Id.* at 799. And the third interest failed because Stacy did not "show how his defense was impaired as a result of the delay." *Id.*

In summary, after considering all of the *Barker* factors, the Kentucky Supreme Court determined that no speedy-trial violation occurred:

> We conclude our Sixth Amendment analysis by finding that Appellant has not been deprived of his speedy trial rights. Although the length of the delay was presumptively prejudicial, we hold that Appellant was largely responsible for the delay and thus, the second *Barker* factor weighs against him. Further, we hold that although Appellant did in fact assert his right to a speedy trial, he failed to vigorously do so, and thus, the third factor weighs against him. Finally, we hold that Appellant suffered little prejudice as a result of the delay and as a result, the fourth factor weighs against him.

*Id.*

On habeas review, Stacy makes no argument as to how the Kentucky Supreme Court's decision was contrary to or involved an unreasonable application of Supreme Court precedent and his claim accordingly fails. *Rice*, 786 F. App'x at 38 ("And because Rice has not cited any Supreme Court precedent recognizing a Sixth Amendment speedy-trial violation on facts remotely similar to those in this case, we cannot conclude that the Ohio appellate court unreasonably applied Supreme Court precedent in weighing those factors."). Moreover, the Kentucky Supreme Court's ruling is in accord with other cases finding no speedy-trial violation with comparable delays. *See United States v. Jackson*, 473 F.3d 660, 668 (6th Cir. 2007) ("Because . . . a twenty-month delay is [not] extraordinary under our precedents, and given the lack of evidence of actual prejudice to *Jackson* or bad faith on the part of the government, the district court reasonably concluded that Jackson has not established a speedy-trial violation warranting dismissal."); *Brown*, 845 F.3d at 719 (affirming district court's decision on habeas review that twenty-five month delay did not amount to speedy-trial violation).

### 4.    Shackling of Defense Witnesses (Claim 4)

Stacy's fourth claim argues that he was denied the right to a fair trial, due process, and equal protection when defense witnesses testified while wearing shackles and prison garb, which he asserts indicated that they were prisoners and that "their testimony could not be taken as true." (R. 1, Page ID 10). Like Stacy's first claim, Respondent argues that Stacy procedurally defaulted this claim by failing to object at trial and that it otherwise fails on the merits.

As before, the Court bypasses the procedural default analysis and considers the merits of the claim, which fails because Stacy does not identify an applicable Supreme Court case that the state court issued a contrary decision to or unreasonably applied. *See Renico*, 559 U.S. at 779. This is likely because, as the Kentucky Supreme Court and a federal district court have observed, the Supreme Court has never ruled that witnesses are prohibited from testifying in shackles or

15

prison garb.[10]  *Stacy*, 396 S.W.3d at 800 ("However, the United States Supreme Court has not determined whether a defendant's right to a fair trial prohibits the defendant's incarcerated witnesses from wearing shackles or prison garb, nor have we."); *Pratt v. Davis*, No. 07-CV-15112, 2009 WL 2766725, at *8 (E.D. Mich. Aug. 26, 2009) ("Because the Supreme Court has never established that a criminal defendant has a constitutional right to prevent a witness from being compelled to testify in prison garb or shackles, habeas relief is not warranted on this claim.").  But even if Stacy passed this hurdle, he would fail to clear the prejudice hurdle; there is no indication that the result of his trial would have been different had the prisoners not been in shackles or prison garb.  *Stacy*, 396 S.W.3d at 803 ("Quite simply, the jury would have known during the course of the witnesses' testimony that they were incarcerated at the time of the event whether or not they were wearing shackles or prison garb.").

### 5.    Ineffective Assistance of Trial Counsel (Claim 5)

Stacy's fifth claim argues that his trial counsel was ineffective because counsel (a) operated under an actual conflict; (b) refused to advocate his pretrial motions; (c) obstructed his ability to view discovery; and (c) failed to contact witnesses favorable to his defense.  (R. 1, Page ID 16).[11]  Respondent argues that this claim is meritless.  (R. 13, Page ID 82).

Stacy's sub-claim (a) was previewed earlier in discussing claim two, in which the Court noted that Stacy appeared to argue that counsel's conflict arose from the statutory organization of the DPA and KDOC as departments of the Justice and Public Safety Cabinet.  He complains that the Kentucky state courts failed to address this specific argument.  This Court can find no merits

---

[10] The Sixth Circuit recently granted conditional habeas relief on a shackling claim, but that case involved the shackling of *a defendant*, not defense witnesses.  *Davenport v. MacLaren*, No. 17-2267, 2020 WL 3529581, at *1 (6th Cir. June 30, 2020).

[11] Despite alleging four instances of ineffective assistance in this claim, Stacy fails to develop his claim with any additional factual or legal argument.

adjudication of this claim and will not apply AEDPA deference but will instead review the claim *de novo*. *See Stermer*, 959 F.3d at 721.

However, Stacy fails to progress far under habeas review because he has, once again, failed to point to clearly established Supreme Court precedent showing a constitutional violation.[12] More fatal still to habeas relief, he tacitly acknowledges that there is none: "This type of conflict has yet to be addressed in the Kentucky Courts, and Petitioner can find no law in the federal data base in which this type of claim has been addressed." (R. 17, Page ID 374). Because he "has not pointed to any other Supreme Court case to support his position," this claim fails "under the narrow [habeas] standards." *Wilson v. Sheldon*, 874 F.3d 470, 477 (6th Cir. 2017).

Stacy's sub-claim (b) argues that trial counsel failed to advocate his pre-trial motion for a speedy trial,[13] which the Kentucky Court of Appeals fittingly characterized as a "bald assertion" on direct appeal from the denial of Stacy's RCr 11.42 motion. *Stacy*, 2016 WL 1558567, at *3. Although Stacy claimed that he filed a *pro se* speedy-trial motion that trial counsel never advocated, the trial court found no record of such a motion having been filed; moreover, his trial counsel did file a speedy-trial motion on his behalf, which ultimately led the Kentucky Court of Appeals to "find nothing in the record to support [Stacy's] claim that trial counsel failed to protect his right to a speedy trial." *Id.* at *4. Stacy fails on habeas review to show how this decision was contrary to or involved an unreasonable application of Supreme Court precedent.

---

[12] Stacy briefly cites *Cuyler v. Sullivan*, 446 U.S. 335 (1980), but acknowledges that that case involved a different type of conflict issue than this case. (R. 17, Page ID 373). To the extent he argues that *Cuyler* is similar to his circumstances so as to warrant relief, more is required under federal habeas review. *See Lopez*, 574 U.S. at 6.

[13] Stacy made a passing reference to counsel also not filing a motion to change venue in his RCr 11.42 motion. (R. 13, Page ID 215). To the extent that he would later argue that this Court failed to address such an argument, it is not the Court's role to "find law or evidence to support" undeveloped claims and they may be deemed "abandoned and insufficiently pleaded under Habeas Rule 2(c)." *Petefish v. Richland Corr. Inst.*, No. 4:13CV1295, 2015 WL 751027, at *4 (N.D. Ohio Feb. 18, 2015).

Stacy's sub-claim (c) argues that counsel obstructed his ability to view discovery.[14]  The Kentucky Court of Appeals disagreed, noting that the record revealed that counsel "worked extensively to produce a large amount of discovery, and that [Stacy] was afforded more than sufficient time to review all of the documents." *Id.* at *5.  As to the one incident report that Stacy asserted counsel failed to produce, Stacy "failed to present evidence that the incident report actually existed and, even if it did, Appellant's claim of what it contained was nothing other than a statement of another witness who was located at a different vantage point during the riots." *Id.* at *4.  Stacy fails to show how this decision was contrary to or involved an unreasonable application of Supreme Court precedent.

Stacy's sub-claim (d) argues that counsel failed to call witnesses favorable to his defense. But as the Kentucky Court of Appeals noted, Stacy "failed to name the witnesses he believed should have been called or articulate how their testimony would have altered the outcome of the trial." *Id.* at *5; (*see* R. 13, Page ID 218).  This failure is likewise fatal on habeas relief.  *See Blaylock v. Burt*, No. 2:10-CV-15044, 2013 WL 8182490, at *12 (E.D. Mich. Dec. 26, 2013), *report and recommendation adopted*, No. 10-15044, 2014 WL 1329001 (E.D. Mich. Apr. 2, 2014) ("Because petitioner did not provide counsel the names of his alibi witnesses, counsel was not ineffective.").  Stacy tries to bolster his claim now, identifying a corrections officer named Susan Gooch, stating Gooch "would have testified that [he] was not outside involved in the riot" but was elsewhere.  (R. 17, Page ID 375).  However, for claims that were adjudicated on the merits in state court, "the record under review [in habeas] is limited to the record in existence at that same time i.e., the record before the state court." *Cullen*, 563 U.S. at 182.  Even if this Court were able to

---

[14] Stacy's RCr 11.42 motion again alludes to a supposed conflict guiding counsel's actions.  (R. 13-2, Page ID 217).

review new evidence, Stacy failed to "submit sworn affidavits from each of the individuals he has identified as uncalled witnesses stating whether they were in fact available to appear at trial and able to give testimony favorable to [his] defense." *Talley v. United States*, No. 1:00-CV-74, 2006 WL 3422997, at *10 (E.D. Tenn. Nov. 27, 2006). Such failure is further fatal to habeas relief.

### 6.    Statutory Conflict of Interest (Claim 6)

Stacy's sixth claim argues that his appellate counsel was ineffective because counsel operated under a conflict of interest and refused to advocate his winning claims on appeal. (R. 1, Page ID 17). Respondent argues that this claim is meritless. (R. 13, Page ID 88).

Stacy's argument that appellate counsel acted under a conflict of interest fails as it is based on his argument concerning Kentucky's organization of the DPA and KDOC, which this Court has already rejected as not grounded in clearly established Supreme Court precedent. As for the claims that Stacy wanted brought on appeal—trial counsel's alleged conflict of interest and Stacy's denial of a speedy trial—both lead nowhere. (*See* R. 13, Page ID 220-21). Again, the conflict-of-interest argument has been rejected.

Next, as the Kentucky Court of Appeals noted, counsel *did* raise a speedy-trial claim on direct appeal, *Stacy*, 2016 WL 1558567, at *5, although counsel did not argue it in the precise manner Stacy wanted, which, according to Stacy, was that the Court had to accept his speedy trial rights as running from the date Stacy presented his *pro se* motion (R. 13, Page ID 221). However, appellate counsel was not required to raise this issue or any other in a particular manner just because Stacy desired it. *Ray v. Maclaren*, 655 F. App'x 301, 311 (6th Cir. 2016) ("Although the failure to raise an issue on appeal can amount to constitutionally ineffective assistance, appellate counsel does not have an obligation to raise every possible claim that a client may have."). "Declining to raise a claim on appeal . . . is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court." *Richardson v. Palmer*, 941 F.3d

838, 858 (6th Cir. 2019) (quoting *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017)).   To show ineffective assistance by appellate counsel, Stacy "must demonstrate 'a reasonable probability that, but for his counsel's unreasonable failure to' raise [an] issue on appeal, 'he would have prevailed.'" *Dufresne v. Palmer*, 876 F.3d 248, 257 (6th Cir. 2017) (quoting *Webb v. Mitchell*, 586 F.3d 383, 399 (6th Cir. 2009)).   Here, Stacy's wanting counsel to raise his speedy-trial issue by trying to convince the court to rely on his *pro se* motion as invoking a triggering date for his right would have failed, as the state trial court, "after reviewing the record and being unable to locate [Stacy's] motion, found that there was no evidence that his motion was ever made."   *Stacy*, 2016 WL 1558567, at *3.   This factual finding is entitled to a presumption of correctness under § 2254(e)(1), which Stacy has not rebutted by clear and convincing evidence.

### 7.        Self-Representation Rights (Claim 7)

Stacy's seventh claim argues that he was denied the right to represent himself because the state trial court erroneously explained his self-representation rights.   (R. 1, Page ID 20). Respondent argues that Stacy procedurally defaulted this claim.   (R. 13).

As noted earlier, one way to procedurally default a claim is by failing to follow an adequate and independent state procedural rule.   *See Davila*, 137 S. Ct. at 2064.   But there is another way, which Respondent argues here:   "[A] petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedure.'"   *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999)).   "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted."   *Williams*, 460 F.3d at 806.

Stacy concedes that this issue is procedurally defaulted because he did not raise it in state court.   (R. 17, Page ID 379).   However, procedural default is not an absolute bar to relief and may

be excused "where a petitioner demonstrates cause and prejudice for the default." *Williams*, 460 F.3d at 799.  Citing *Martinez v. Ryan,* 566 U.S. 1 (2012), Stacy argues that his lack of post-conviction counsel to assist him in preparing his RCr 11.42 motion serves as the cause to excuse his default.  (R. 17, Page ID 379).[15]

Generally, as the Supreme Court recognized in *Coleman v. Thompson*, because a post-conviction petitioner has no right to counsel, the ineffectiveness of post-conviction counsel cannot serve as cause to excuse a procedural default.  501 U.S. 722, 757 (1991) ("Because Coleman had no right to counsel to pursue his appeal in state habeas, any attorney error that led to the default of Coleman's claims in state court cannot constitute cause to excuse the default in federal habeas.").  However, *Martinez* recognized a narrow exception.

> To protect prisoners with a potentially legitimate claim of ineffective assistance of trial counsel, it is necessary to modify the unqualified statement in *Coleman* that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default.  This opinion qualifies *Coleman* by recognizing a narrow exception:  Inadequate assistance of counsel *at initial-review collateral proceedings* may establish cause for a prisoner's procedural default of *a claim of ineffective assistance at trial*.

*Martinez,* 566 U.S. at 9 (emphasis added).  The reason for this narrow exception is that, in states where "the initial-review collateral proceeding is the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial, the collateral proceeding is in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance claim."  *Id.* at 11.

> As *Coleman* recognized, an attorney's errors during an appeal on direct review may provide cause to excuse a procedural default; for if the attorney appointed by the State to pursue the direct appeal is ineffective, the prisoner has been denied fair process and the opportunity to comply with the State's procedures and obtain an adjudication on the merits of his claims.

---

[15] Because Stacy first argued *Martinez* in his reply brief for claims seven and eight, the Court permitted the parties to further brief the issue.  (*See* R. 19; R. 20; R. 21).

*Id.* *Martinez* extends beyond where counsel was ineffective to where "the State did not appoint an attorney to assist the prisoner in the initial-review collateral proceeding." *Id.* at 12. And the Sixth Circuit has recognized that *Martinez* applies to Kentucky prisoners. *Woolbright v. Crews*, 791 F.3d 628, 636 (6th Cir. 2015).[16] However, *Martinez* does not apply to every Kentucky petitioner's habeas claim.

As *Martinez*'s reasoning and later case authority make clear, *Martinez* cannot apply here because Stacy is not trying to excuse the default of an *ineffective-assistance-of-trial-counsel claim.* He is trying to excuse the default of a *trial-court-error claim*. *Martinez* "respond[ed] to an equitable consideration that is unique to claims of ineffective assistance of trial counsel." *Davila*, 137 S. Ct. at 2068. It can serve as cause to excuse the default of only ineffective-assistance-of-trial-counsel claims. "*Coleman* held that an attorney's negligence in a postconviction proceeding does not establish cause, and this remains true *except* as to initial-review collateral proceedings for claims of *ineffective assistance of counsel at trial*." *Martinez*, 566 U.S. at 15 (emphasis added); *Davila*, 137 S. Ct. at 2069 ("If a prisoner can establish ineffective assistance of trial counsel under *Martinez*, he ordinarily is entitled to a new trial. But if he cannot, *Martinez* provides *no avenue for litigating other defaulted trial errors*.") (emphasis added). Accordingly, as *Martinez* does not apply, and Stacy offers no other basis to excuse his admitted procedural default, this claim will not be reviewed on the merits. *See Davila*, 137 S. Ct. at 2064.

### 8.    Rejected Plea Deal (Claim 8)

Stacy's eighth claim argues that his trial counsel was ineffective for advising him to reject a plea deal. (R. 1, Page ID 22). Respondent argues (R. 13, Page ID 92), and Stacy concedes, that

---

[16] The Supreme Court clarified in *Trevino v. Thaler*, 569 U.S. 413, 429 (2013) that *Martinez* applies regardless of whether the state *explicitly or effectively* forecloses review of an ineffective-assistance-of-trial-counsel claim on direct appeal.

this claim is procedurally defaulted; however, Stacy argues that the *Martinez* exception—the absence of state-court post-conviction counsel in his RCr 11.42 proceeding—serves as cause to excuse his procedural default (R. 17, Page ID 381). This Court need not address *Martinez* or procedural default as Stacy's failure to adequately develop this claim is a more direct basis on which to proceed. *See Manns v. Beckstrom*, 695 F. App'x 883, 885 (6th Cir. 2017) (declining to address *Martinez* exception where claim otherwise failed).

In his § 2254 petition, Stacy asserts that the prosecution offered a plea deal of ten years but that his counsel advised him to reject the deal because she believed that he would not be convicted of arson. (R. 1, Page ID 22). According to Stacy, he reiterated his willingness to accept the deal but counsel told him that he did not need to accept it because "we have an officer that will testify that they seen other inmates, not you setting the fire." (*Id.*). Still, Stacy was allegedly unconvinced, reasoning that the jury would likely convict him of the rioting charge. (*Id.*). Counsel said they would discuss the plea offer later, but after two months passed, counsel told him that the plea had lapsed but not to worry because he might get a better deal. (*Id.*). However, a better deal never came, and Stacy received 20 years in prison after losing at trial. (*Id.*).

Respondent disputes the factual basis for Stacy's claim, supplying a letter from Commonwealth Attorney Richard Bottoms, which offered to recommend twenty years in prison if Stacy pled guilty by September 7, 2010, and stating that Bottoms did not remember offering a ten-year plea deal. (R. 20, Page ID 404-09). Stacy replies that Respondent's assertions cannot be accepted as true; rather, the Court needs to hold an evidentiary hearing on this claim. (R. 21, Page ID 412). However, Stacy's failure to develop his claim means that the Court need not resolve the dispute about the existence of the ten-year plea deal. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

23

Stacy relies upon *Lafler v. Cooper*, a case where a defendant rejected a plea offer on advice that was conceded to be ineffective assistance of counsel. *Lafler v. Cooper,* 566 U.S. 156, 160 (2012); (R. 17, Page ID 382).[17]  To show prejudice in such cases, *Lafler* set the following standard:

> In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler,* 566 U.S. at 164.  This is where Stacy fails.  Even accepting his representation that he would have accepted the plea offer's terms, Stacy has not shown that the prosecution would not have withdrawn it in light of intervening circumstances.  *See Frye*, 566 U.S. at 150 ("The Court of Appeals failed, however, to require Frye to show that the first plea offer, if accepted by Frye, would have been adhered to by the prosecution and accepted by the trial court.").  In Kentucky the prosecution remains free to withdraw a plea offer before it is entered or before the defendant takes action to his detriment in reliance on the offer.  *See Masby v. Commonwealth*, No. 2002-CA-000868-MR, 2003 WL 1948908, at *2 (Ky. Ct. App. Apr. 25, 2003).  Additionally, although Stacy contends that the state trial judge would have accepted the offer because the judge accepted the same ten-year plea deal as to other prison-riot defendants, this summary allegation is not enough. *See Shores v. Commonwealth*, No. 2002-SC-0033-MR, 2003 WL 21993679, at *2 (Ky. Aug. 21,

---

[17] Stacy also briefly mentions *Missouri v. Frye*, which involved a claim that ineffective assistance of counsel led to a lapse of a plea offer.  566 U.S. 134, 138 (2012).  (R. 17, Page ID 382).  To the extent that Stacy also seeks to rely on this case, the Court need not separately address it, as both cases require the same showing.  *Frye*, 566 U.S. at 147 ("To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel.  Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law."); *Lafler*, 566 U.S. at 164.

2003) ("In addition, it is within the discretion of the trial court to accept or reject a guilty plea."). Stacy fails to name a single defendant in these other cases, explain how their charges and circumstances were similar to his, or offer proof that the plea offer was the same. *See Byrd v. Skipper*, 940 F.3d 248, 258 (6th Cir. 2019), *cert. denied*, No. 19-992, 2020 WL 2621729 (U.S. May 26, 2020) (finding that habeas petitioner demonstrated that trial court would have accepted plea where he pointed to a specific defendant and bargain that was reached "as a comparator"). Having failed to adequately develop the basis for a *Lafler* claim, Stacy is not entitled to relief. *McGowan v. Burt*, 788 F.3d 510, 518 (6th Cir. 2015) ("[E]ven if McGowan had shown that he would have accepted the offer had he fully understood his options and possible consequences, he has failed to make the required showing, per *Lafler*, that the trial court would have been willing to sentence him in accordance with the terms of the plea agreement.").

### III.    EVIDENTIARY HEARING AND APPOINTMENT OF COUNSEL

In his § 2254 petition and reply brief, Stacy asserts that he is entitled to an evidentiary hearing. He is not. (R. 1, Page ID 23; R. 17, Page ID 385). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petitioner's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). And, as already noted, where "the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.* Here, Stacy's failure to make the necessary showings to prove his claims otherwise precludes habeas relief, meaning, no evidentiary hearing is warranted.

Stacy also requests that counsel be appointed. (R. 1, Page ID 23; R. 17, Page ID 385). Counsel is appointed to represent a defendant in post-conviction collateral proceedings only in limited circumstances. The Criminal Justice Act governs appointment of counsel in the context of

§ 2254 proceedings.  Section 3006A(a)(2)(B) states, "[w]henever the United States magistrate judge or the court determines that the interests of justice so require, representation may be provided for any financially eligible person who . . . is seeking relief under section 2241, 2254, or 2255 of title 28." *See* 18 U.S.C. § 3006A(a)(2)(B).  As indicated by the permissive language of the statute, no constitutional right to counsel exists in a post-conviction collateral proceeding.  *See Post v. Bradshaw*, 422 F.3d 419, 425 (6th Cir. 2005) (citing *Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991)).

In a § 2254 proceeding, an attorney must be appointed if an evidentiary hearing becomes necessary or if the judge concludes that appointment of an attorney is necessary for effective discovery, provided the defendant is financially eligible to have counsel appointed.  *See* Rules 8(c) and 6(a) of the Rules Governing Section 2254 Cases.  Here, the Court has determined that no evidentiary hearing is needed, nor has Stacy explicitly alleged (or does it appear) that counsel is needed for effective discovery.  Accordingly, it is solely within the discretion of the Court to appoint counsel, which should be done only if "the interests of justice so require."  *See* 18 U.S.C. § 3006A(a)(2)(B).  Stacy has not shown that it would be in the interests of justice to appoint counsel.

## IV.    CERTIFICATE OF APPEALABILITY

Stacy is not entitled to a certificate of appealability (COA).  Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Proceedings for the United States District Courts, the District Court must issue or deny a COA when it enters a final order adverse to the applicant.  A COA may issue only if a petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The Supreme Court explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  In cases where a district court has rejected a petitioner's constitutional claims on the

26

merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the denial of Stacy's § 2254 petition or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it will be recommended that a COA be denied upon the District Judge's entry of a final order in this matter.

## V.   CONCLUSION AND RECOMMENDATION

For the reasons stated herein, **IT IS RECOMMENDED** that:

1)   Stacy's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (R. 1), including his requests therein for an evidentiary hearing and appointment of counsel, **be denied** and this matter **be dismissed;**

2)   A certificate of appealability **be denied** by the District Judge in conjunction with the entry of a final order in this matter;

3)   Judgment in favor of the Respondent **be entered** contemporaneously with the entry of a final order; and

4)   This case **be stricken** from the active docket of this Court.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. *See also*

Rules Governing Section 2254 Proceedings for the United States District Courts, Rule 8(b).

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any

party may serve and file specific written objections to any or all findings or recommendations for

determination, *de novo*, by the District Judge.  Failure to make a timely objection consistent with

the statute and rule may, and normally will, result in waiver of further appeal to or review by the

District Judge and Sixth Circuit Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985);

*United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

    Dated this 28th day of July, 2020.



**Signed By:**

*Candace J. Smith*

**United States Magistrate Judge**

J:\DATA\habeas petitions\2254 IAC\17-352-HRW Stacy R&R.mb.docx